AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Items Recovered for the search of xxxx x$^{th}$ Street, N.W. Washington, DC on March 6, 2007, including,
Sony Laptop, serial # xxxxxxxxxxxxxxxxx
Gateway Laptop, serial # xxxxx-xxx-xxx-xxx
Midwest Computer Tower, Serial # xxxxxxxxxxxxx
Data storage devices, including a compact pocket CD, cellular telephone, floppy discs and CD-ROMS

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I     RYAN PETRASEK                being duly sworn depose and say:

I am a(n)    Special Agent, U.S. Secret Service    and have reason to believe
                    (Official Title)

that on the following items which were recovered from the search of the premises of xxxx-xth Street, N.W. on March 6, 2007, including a Sony Laptop, serial number xxxxxxxxxxxxxxxx; a Gateway Laptop, serial number xxxxx-xxx-xxx; a Midwest computer tower, serial number xxxxxxxxxxxxxxx; Data storage devices, including a compact pocket personal computer, cellular telephones, floppy discs and CD-ROMS, including the CD-ROM found in a black computer laptop bag on which the front of the counterfeit $100.00 bill was found, which items are now located at the offices of the U.S. Secret Service, located at xxx Murray Drive, Building xxx, Washington, DC 20223.

concerning a violation of Title   18   United States Code, Section(s)  § 471 . The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

DEBRA LONG-DOYLE
Federal Major Crimes Section
(202)305-0634

Signature of Affiant
RYAN PETRASEK, SPECIAL AGENT
U.S. Secret Service

Sworn to before me, and subscribed in my presence

_____    at Washington, D.C.
Date

_____    _____
Name and Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

1.  Your affiant in this matter, RYAN PETRASEK (hereinafter referred to as "affiant"), is a Special Agent with the United States Secret Service (hereinafter referred to as "USSS"), which is part of the United States Department of Homeland Security.

2.  The objective of this affidavit is to establish probable cause that the computers and electronic media recovered from the            N. W. Washington D. C., the residence of                    , contain evidence of Manufacturing Counterfeit U.S. Currency, in violation of Title 18 U.S.C. Section 471.

3.  On March 6, 2007, a search warrant issued by United States Magistrate Judge John M. Facciola (07-mj-79), was executed at the home of                ' located at ·· ·  ·, N.W. Washington D.C. A copy of the affidavit used in the application for that search warrant, including the attachments to that affidavit, is attached to this affidavit as an attachment and is incorporated herein by reference. Recovered during the search were three computers: a Sony laptop, with serial number 28397549000325; a Gateway laptop with serial number 00043-569-752-792; a Midwest computer tower with serial number 002739789. Also recovered during the search were numerous data storage devices, including a compact pocket CD, cellular telephones, floppy discs and CD-ROMs, including the CD-ROM found in a black computer laptop bag on which the front of the counterfeit $100 bill was found.

4.  On March 12, 2007, USSS Special Agent Stephen Kopeck conducted a preview search of the above computers and storage devices, including the CD-ROM. During this preview search SA Kopeck discovered on the CD-ROM a single image of the front of a $100 Federal Reserve Note. Upon viewing the image of currency SA Kopeck discontinued the preview search. At this time your affiant respectfully requests an additional search warrant be issued to search the

recovered computers and electronic media for evidence of the manufacturing of counterfeit U.S. currency.

_____
Special Agent Ryan Petrasek
United States Secret Service

Sworn to and subscribed before me this JUN 14 2007 day of June, 20007

_____
John M. Facciola
United States Magistrate Judge
District of Columbia

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

WASHINGTON, DC 20011-4021

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER: 07-079-M-01.

(Further described below)

I __RYAN PETRASEK__ being duly sworn depose and say:

I am a(n) __Special Agent with the United States Secret Service__ and have reason to believe
           (Official Title)

that (name, description and or location)
would lead to the discovery of evidence of Bank Fraud, in violation of Title 18 U.S.C. Section 1344 and other criminal offenses. See Attached

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
   SEE ATTACHMENT A

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
   SEE ATTACHED AFFIDAVIT

concerning a violation of Title _18_ United States Code, Section(s)_. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    x   YES   ☐ NO

DEBRA LONG-DOYLE
WASHINGTON, DC
(202)202-305-0634

Signature of Affiant
RYAN PETRASEK, Special Agent, U.S. Secret Service
(202) 538-5376

Sworn to before me, and subscribed in my presence

MAR 0 5 2007

Date    JOHN M. FACCIOLA
        U.S. MAGISTRATE JUDGE

Name and Title of Judicial Officer

at Washington, D.C.

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

### A. AFFIANT BACKGROUND

1. Your affiant in this matter, RYAN PETRASEK (hereinafter referred to as "affiant"), is a Special Agent with the United States Secret Service (hereinafter referred to as "USSS"), which is part of the United States Department of Homeland Security. Your affiant has been with the USSS since April 2005. Prior to that, your affiant was employed with the Washington, D. C. Metropolitan Police Department for four years. The affiant was assigned to the Seventh District as a patrol officer. Your affiant has conducted numerous investigations involving financial crimes, and has participated in the execution of numerous search warrants and arrests as both a Special Agent and as a Metropolitan Police Officer in the District of Columbia.

2. As a Special Agent with the USSS, your affiant attended a three-month training program at the Federal Law Enforcement Training Center in Glynco, Georgia. The affiant received training in Financial Crimes Investigations, Introduction to Computer Crimes, Introduction to Computer Forensics and other white collar investigations. In addition, your affiant has received training in counterfeit currency, counterfeit financial obligations, identity theft, access device fraud, computer related crimes and asset forfeiture at the U.S. Secret Service Training Academy in Beltsville, Maryland. As a Metropolitan Police Officer, affiant received training in the execution of search and arrest warrants, Patrol tactics and courtroom testimony.

### B. OBJECTIVE OF THE AFFIDAVIT

1

3. The objective of this affidavit is to establish probable cause that the issuance of a search warrant for the premises located at _____ N. W. Washington D. C., the residence of NAIYBEYE KOUMBAIRIA, would lead to the discovery of evidence of Bank Fraud, in violation of Title 18 U.S.C. Section 1344 and other criminal offenses.

4. Based on your affiant's training, experience, and participation in other investigations involving fraud against financial institutions, and based on my discussions with other Special Agents involved in this investigation concerning their experience with similar investigations, your affiant has learned that in such operations involving the use and creation of counterfeit checks, that the checks are often created using particular types of computer software available at office supply stores. Your affiant has further observed from his experience, and that of other Special Agents involved in this investigation, that the computers and computer software used to create the counterfeit checks and other records which evidence this type of crime are often kept at the homes of the perpetrators of such schemes, where they often prepare the counterfeit documents. Your affiant has further observed from his experience and that of other Special Agents involved in this investigation that the following kinds of evidence relevant to this type of investigation are usually recovered in the searches of the residence of an individual involved in the creation of counterfeit checks:

    a. Books, records, receipts, notes, ledgers, and other documents relating to the production of counterfeit checks

    b.    Personal papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the production of counterfeit checks.

    c.    Paper or computer records of files relating to the income or expenditure of money, inventory, costs, searches of internet sources relating to the production of counterfeit checks;

    d.    Computer records or files reflecting names, addresses, telephone numbers, and other contact or identification data relating to the financial transactions, including computer software relating to the creation of business drafts or checks; and

    e.    Cash or property obtained with illegal proceeds of criminal activity.

    f.    Computer Equipment and storage device capable of being used to commit, further, or store evidence of the creation of counterfeit checks, including, but not limited to the following:

        i.    <u>Computer Hardware</u>

Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units); internal and peripheral storage devices

(such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers);and their stored information; and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

ii.     <u>Computer Software</u>.

Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

iii.    <u>Computer-Related Documentation</u>

Computer-related documentation consists of written, recorded, printed or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

iv. <u>Passwords and Data Security Devices</u>

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

C. **SOURCE OF EVIDENCE**

5. Affiant is familiar with the facts and circumstances of this investigation. All relevant events described herein occurred in the District of Columbia, and the surrounding Metropolitan D.C. area. The information contained in this affidavit is

based upon the affiant's personal knowledge obtained during this investigation, knowledge obtained from other individuals, including review of documents and audio-recordings related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and from information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts which I believe are necessary to establish probable cause that the defendant named herein has violated the Conspiracy and Bank Fraud statutes and that evidence of such criminal acts might be found in the house in which he is currently residing.

D.  **FACTUAL BACKGROUND**

6. Your affiant and other agents of the USSS have been conducting an ongoing investigation on a group of individuals involved in conspiracy to commit Bank Fraud. This investigation began on February, 8 2006, and has been ongoing to the present date. To date, over 500,000.00 dollars in counterfeit checks have been uttered at check cashing stores and financial institutions in the Washington D.C. metropolitan area. On August 12, 2006, Cooperating Witness (Hereinafter "C-1") was placed under arrest by the Metropolitan Police Department for violations of Title 18 USC 1344 Bank Fraud.

7. On August 15, 2006, C-1 stated to your affiant that in December, it had

been approached by a black male, who used the street name "BEE" (later identified as NAIBEYE KOUMBAIRIA). KOUMBAIRIA asked C-1 to cash "fake" (ie: counterfeit) checks that he produced in exchange for a percentage of the illicit profits received from the uttering of the said counterfeit checks. C-1 admitted to cashing approximately 10 counterfeit checks it received from KOUMBAIRIA. C-1 stated that KOUMBAIRIA produced counterfeit checks drawn on legitimate business accounts. C-1 stated that KOUMBAIRIA produced a new batch of counterfeit business checks using different compromised account information check, after each account was discovered to be compromised by the financial institutions. KOUMBAIRIA stated to C-1 that he obtained the business account information from an unknown source who worked inside a financial institution. C-1 stated that KOUMBAIRIA indicated that he had been producing "fake" (counterfeit) checks since 1997.

8. C-1 has been determined to be reliable by providing information about KOUMBAIRIA and the fraud scheme, such as: the make, color and approximant year of KOUMBAIRIA's vehicle, KOUMBAIRIA's drug arrest for possession of Marijuana, and that KOUMBAIRIA was born in Africa. On January, 30 2007, C-1 positively identified NAIBEYE KOUMBAIRIA as the person known to it as "BEE" from KOUMBAIRIA's DC DMV photo.

9. On February 7, 2007, Cooperating Witness (Hereinafter "C-2") was interviewed by Agents of the USSS. C-2 has been proven to be reliable on numerous occasions. C-2 admitted to participating in the conspiracy to commit bank fraud with a person known to it as "BEE." C-2 stated it had met KOUMBAIRIA in

7

summer of 2006, at which time C-2 revealed to KOUMBAIRIA that it worked at a nationally known financial institution. KOUMBAIRIA asked C-2 if it would like to make additional income by supplying KOUMBAIRIA with customer account information from the financial institution. C-2 agreed to supply KOMBAIRIA with account information in exchange for monetary compensation.

10. C-2 stated to Agents of the USSS that it supplied KOUMBAIRIA with approximately 15 account numbers and numerous copies of customer's business checks obtained from the financial institution. C-2 stated that KOUMBAIRIA explained to it that the information was used to produce "fake" (counterfeit) checks that would be cashed by persons who were in need of money. KOUMBAIRIA offered C-2 $500 dollars for each account that C-2 provided from the financial institution. C-2 stated that he only received between $100 to $200 dollars per account he provided to

KOUMBAIRIA. C-2 stated that when questioned about the discrepancy, KOMBAIRIA stated that the other persons in the conspiracy needed to be paid a portion of the profits. 11. The account information provided by C-2 to KOUMBAIRIA was

subsequently used on counterfeit business checks that have been cashed in the D.C. Metropolitan area at various financial institutions and private check cashing businesses. C-2 provided verifiable information about KOUMBAIRIA such as; the make, model and color of KOUMBAIRIA vehicle, KOUMBAIRIA home address, and facts about KOUMBAIRIA's family. C-2 positively identified NAIBEYE KOUMBAIRIA as the person known to it as "BEE" from KOUMBAIRIA's DC DMV photo.

D. **PROBABLE CAUSE FOR THE SEARCH**

8

12. On May 15, 2006, KOUMBAIRIA was arrested by the Washington D.C. Metropolitan Police Department (MPDC) for Uniformed Controlled Substance Act, Possession of Marijuana. KOUMBAIRIA provided his home address to the MPDC as                          , Washington D.C. On February 28, 2007, your affiant conducted A WALES/NCIC check of KOUMBAIRIA's Washington D.C., driver's license which listed his home address as                          Washington, D.C. On February 28, 2007, your affiant observed KOUMBAIRIA driving a Mercedes-Benz bearing DC Tag:         A NCIC check on the tag revealed that the vehicle is registered to KOUMBAIRIA at the above listed address. On the same date your affiant observed KOUMBAIRIA enter the address at                      ., Washington, D.C. 20011.

13. Based upon the above statement of facts and circumstances, affiant submits that there is probable cause to believe that the items set forth in Attachment B to this affidavit and the search warrant will be found at                          Washington, D.C. 20011, as further described in Attachment A, said items constitute fruits, evidence, and instrumentalities used to commit violations of 18 U.S.C. § 1344 (Bank Fraud).

14. Your affiant submits that, based on the forgoing, it is reasonable to expect that information, records and documents pertaining to the financial and banking transactions relating to Bank of America, SunTrust Bank, Wachovia and Columbia Bank will be found at KOUMBAIRIA's home. In addition, your affiant submits that it is also reasonable to expect to find information, records and documents pertaining to financial and banking transactions with other financial establishments, corporations and businesses in light of KOUMBAIRIA's statement to

9

C-2 that he had done this type of fraud before using several different people and businesses.

_____
Special Agent Ryan Petrasek
United States Secret Service

Sworn to and subscribed before me this 5th day of March, 20007

_____
John M. Facciola
United States Magistrate Judge
District of Columbia

10

## ATTACHMENT A

Washington D.C. 20011

. N.W. is a two-story "row" home made of red brick. There is a front porch with the numbers in black lettering on white tile centered on the floor of the front porch. The front porch is covered by a green and white awning. The yard is bordered with a green wrought iron fence.

## ATTACHMENT B

### ITEMS TO BE SEIZED FROM
### Washington D.C.

Evidence, fruits, and instrumentalities of the commission of a criminal offense to be seized, as set forth in the affidavit, includes but is not limited to:

1. Computer Equipment and storage device capable of being used to commit, further, or store evidence of the creation of counterfeit checks, including:

    a. <u>Computer Hardware</u>

    Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers);and their stored information; and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

    b. <u>Computer Software</u>
    Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

    c. <u>Computer-Related Documentation</u>
    Computer-related documentation consists of written, recorded, printed or electronically stored material which

  explains or illustrates how to configure or use computer hardware, software, or other related items.
  d. <u>Passwords and Data Security Devices</u>
  Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

2 Any and all materials used to produce counterfeit checks, to include but not limited to check stock, computers, computer printers, computer software, bank account information, identifications, applications, bank documents, publications and applications.

3 Bank recorders, including statements, cancelled checks, deposit slips/receipts, memos, passbooks, money drafts letters of credit, letters of deposit, bank drafts, cashiers checks other related records, and safe deposit box keys.

4 Other financial documents and records, including bills, receipts, credit cards, credit card statements, record of travel, indicia of occupancy, residency, rental, or ownership of properties, utility bills, telephone bills, and other similar records.

5 Telephone records, including toll records, receipts, bill's service data, telex activity, facsimile activity, and other related records.

6 Correspondence, memoranda, notes or other material referencing bank transactions, and/or identifying business locations, bank accounts, business partners, associates, employees, vendors, contractors for any related business or service, brokers, tenants, sellers, buyers or any other business customers.

7 Proceeds, including cash, cashier's checks, money orders, undeposited checks, or any form of money or money equivalent.

8 Courier documentation, including packaging, receipts, sender and receiving information, containers used in shipping.

9   Electronic equipment, such as cellular telephones, cellular telephone hardware which consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar data and related packaging material.

10  Any other evidence, fruits, or instrumentalities, at this time unknown, relating to violations of Title 18 U.S.C. § 1344 (Bank Fraud).